IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

DEBRA McCARTHY,

    Plaintiff,

vs.                                                                   Civ. No.  99-1366 JP/RLP

RIO RANCHO PUBLIC SCHOOLS
BOARD, CARL HARPER, REINALDO
GARCIA, RICHARD MUENZER, and
SUE CLEVELAND,

    Defendants.

## MEMORANDUM OPINION AND ORDER

On November 20, 2000, the Defendants filed a Motion to Dismiss or in the Alternative for Summary Judgment (Doc. No. 16).  After a careful review of the briefs and the relevant law, I have determined that Defendants' Motion to Dismiss or in the Alternative for Summary Judgment should be granted.

I.  Background

In the spring of 1997, the Plaintiff applied for the position of school nurse at the new Rio Rancho High School for the 1997-1998 school year.  The position of high school nurse included being the head nurse for the school district and serving on the Health Curriculum Committee to develop health education programs including a sex education curriculum.

The principal of the Rio Rancho High School and the hiring committee recommended to the Superintendent of the Rio Rancho Public Schools (Defendant Cleveland) that the Plaintiff be hired as the high school nurse.  In May 1997, Defendant Cleveland presented the Plaintiff's job application packet to the Defendant Rio Rancho Public Schools Board (Defendant Board).  The

Defendant Board noticed on the Plaintiff's resume that she had worked for Planned Parenthood. This prior employment raised some concerns with the Defendant Board regarding the Plaintiff's views on sex education. The Defendant Board telephoned the Plaintiff and asked her questions about her views on sex education.

Although the Defendant Board did not have a written policy concerning sex education, it had a consensus that an abstinence-only approach to sex education would be followed in the school district. The Defendants perceived that both the Plaintiff and Planned Parenthood advocate the use of an abstinence-<u>based</u> sex education program. However, the Plaintiff indicated to the Defendant Board that she would follow its abstinence-only policy. Defendants Harper, Garcia, and Muenzer, members of the Defendant Board, nonetheless felt that the Plaintiff would not be able to whole-heartedly adhere to the Defendant Board's sex education policy. Sensing that the Defendant Board was not inclined to hire the Plaintiff, Defendant Cleveland withdrew the Plaintiff's job application for high school nurse.[1] The Plaintiff then filed this lawsuit alleging that the Defendants violated her First Amendment rights to freedom of association, free speech, and privacy by not hiring her as a high school nurse.

II. Summary Judgment Standard

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). When applying this standard, I examine the factual record and reasonable inferences therefrom in the light most favorable to the party opposing summary judgment. *Applied Genetics Intl, Inc. v. First*

---

[1] In February 2000, the Defendant Board offered the Plaintiff a position as an elementary school nurse provided she signed a statement that she would follow the abstinence-only policy. The Plaintiff did not accept this offer of employment.

*Affiliated Sec., Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990). The moving party bears the initial burden of showing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Only then does the burden shift to the non-movant to come forward with evidence showing that there is a genuine issue of material fact. *Bacchus Indus., Inc. v. Arvin Indus., Inc.*, 939 F.2d 887, 891 (10th Cir. 1991). The non-moving party may not avoid summary judgment by resting upon the mere allegations or denials of his or her pleadings. *Id*.

III. Standard for a Motion to Dismiss

In considering a motion to dismiss for failure to state a claim, I must liberally construe the pleadings, accept as true all factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor. *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir. 1984). I may dismiss the complaint if it appears to a certainty that the plaintiff can prove no set of facts in support of the plaintiff's claim which would entitle the plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

IV. Discussion

The Defendants argue first that they are entitled to summary judgment on the right to freedom of association claim because their decision not to hire the Plaintiff did not violate the First Amendment. The individual Defendants also argue that they are entitled to qualified immunity on the right to freedom of association claim. Next, the Defendants contend that the Plaintiff has failed to state a claim for violations of her rights to free speech and privacy. Finally, the Defendants request that I strike the Plaintiff's allegations in the First Amended Complaint regarding promises of employment and a coverup of the reason why the Defendant Board did not hire the Plaintiff.

A. Right of Freedom of Association

To defeat summary judgment on the issue of freedom of association, the Plaintiff must "establish a genuine dispute of fact that (1) political affiliation and/or beliefs were 'substantial' or 'motivating' factors behind [the failure to hire] and (2) [Plaintiff's ] employment position[] did not require political allegiance." *Jantzen v. Hawkins*, 188 F.3d 1247, 1251 (10th Cir.1999). It is undisputed that the Defendants' motivating reason for not hiring the Plaintiff was her belief that an abstinence-based program is more effective in preventing unwanted pregnancies and sexually transmitted diseases than an abstinence-only program. For the Plaintiff to defeat this motion for summary judgment she must show a genuine dispute of fact with respect to whether the position of high school nurse required a political allegiance to the Defendants. The Plaintiff also requests partial summary judgment in her favor on the right to freedom of association claim. *See Dickeson v. Quarberg*, 844 F.2d 1435, 1444-45 n.8 (10th Cir. 1988)(a court can render a summary judgment for the nonmovant even if no formal cross-motion for summary judgment was filed).

In *Elrod v. Burns*, 427 U.S. 347, 367 (1976), the Supreme Court held that the government has a valid interest in ensuring the loyalty of its employees. The least restrictive means of ensuring that loyalty is to limit patronage dismissals[2] to policymakers. *Id*. The Supreme Court admitted that there is "[n]o clear line [which] can be drawn between policymaking and nonpolicymaking positions." *Id*. The Supreme Court, however, noted that the courts should examine the nature of the employee's responsibilities, not the number of responsibilities, in determining if a position is a policymaking one. *Id.* The Supreme Court indicated that a

---

[2]The Supreme Court subsequently held that an employee's right to freedom of association applies in the hiring context as well. *Rutan v. Republican Party of Illinois*, 497 U.S. 62, 77 (1990).

4

policymaker is more likely to have "responsibilities that are not well defined or are of a broad scope...." *Id*. at 368.  Moreover, the courts should consider "whether the employee acts as an adviser or formulates plans for the implementation of broad goals." *Id*.  Finally, the Supreme Court stated that the government has the burden of proof to show that an employee's right to political association should be overridden to obtain employee loyalty. *Id*.  Any doubts should be resolved in the employee's favor. *Id*.

The Supreme Court in *Branti v. Finkel*, 445 U.S. 507, 518 (1980) refined *Elrod* by holding that a government employer can terminate an employee for his or her political affiliations if "the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved."  The Supreme Court effectively held that a policymaking or confidential working relationship between an employee and the government is relevant, but not dispositive, in determining whether political affiliation is an appropriate requirement for the effective performance of a job. *See Dickeson*, 844 F.2d at 1440-41 (discussing *Elrod* and *Branti*).  The Tenth Circuit held in *Dickeson*, 844 F.2d at 1442, that the court must analyze the inherent powers of the position at issue as well as the actual duties performed by employees in that position to decide if a job requires political allegiance.

In this case, the Rio Rancho Report of Performance and Employment Recommendation for Professional School Nurse states that the school nurse will establish and manage a coordinated school health program consistent with the law and local school district policy.  Exhibit B at 1 (attached to Exhibit A of Memorandum in Support of Defendants' Motion to Dismiss or in the Alternative Motion for Summary Judgment (Doc. No. 17), filed Nov. 20, 2000)).  The school nurse is also expected to "[c]onsult[] with the school administrators, physicians and others to

establish review and revise policies, procedures and specific programs for coordinated school health education and services." *Id*.  The school nurse develops needs assessment procedures and data collection procedures, a plan to evaluate health services, and programs for communicable disease prevention and infection control.  *Id*.  The school nurse responsibilities include preparing written reports for school officials and state agencies, organizing and implementing state mandated programs, promoting safety practices, participating in the development of an emergency plan, interpreting school health service needs and the role of the school nurse to the school and community, serving on school health advisory committees, and facilitating the orientation, training, supervision and evaluation of health assistant personnel.  *Id*.  The school nurse is required to use the nursing process and the professional school nurse plans to implement health care in collaboration with educational staff, families, and students.  *Id*.  The school nurse is further required to "collaborate[] with other professionals, team members and community providers in assessing, planning, implementing and evaluating programs and other school health activities in order to maximize and coordinate services and prevent duplication...." *Id*. at 2.  The school nurse "assists students, families and staff to achieve optimal levels of wellness through health education and promotion;" " participates with other members of the community in assessing, planning, implementing and evaluating school health services and community services which include the broad continuum of primary, secondary and tertiary prevention programs;" and "applies nursing theory as the basis for decision-making in the school setting while expanding knowledge and skills in response to student health needs...." *Id*. at 3.  The job description for school nurse indicates that the school nurse will serve on committees and attend required meetings. Exhibit A at 1 (attached to Exhibit A of Memorandum in Support of Defendants' Motion to Dismiss or in the

Alternative Motion for Summary Judgment). The high school nurse currently serves on the Health Curriculum Committee which is developing a sex education curriculum.

The school nurse's responsibilities are broad in scope. For example, the school nurse is required to establish and manage a coordinated school health program consistent with the law and school policy; consult with school administrators and others to review and revise policies, procedures and specific programs for coordinated school health education and services; and interpret school health service needs and the role of school nurse. In addition, the school nurse develops, implements, and evaluates various programs, all without specific guidelines. *See Jimenez Fuentes v. Torres Gaztambide*, 807 F.2d 236, 242 (1st Cir. 1986), *cert. denied*, 481 U.S. 1014 (1987)(influence on programs is a factor in determining whether political affiliation is a requirement for position). Moreover, the undisputed evidence indicates that the school nurse acts as an adviser by consulting with school administrators and serving on school health advisory committees. The school nurse position requires the school nurse to formulate plans to implement broad goals like instituting an abstinence-only sex education policy and collaborating with educational staff, families, student, other professionals, team members, and community providers to provide health care services. The evidence shows that the school nurse's duties are not simply clerical, nondiscretionary or technical in nature, factors indicative of a position not requiring political allegiance. *See Brown v. Trench*, 787 F.2d 167, 169 (3rd Cir. 1986). Furthermore, the school nurse is expected to participate in committees and meetings, an activity associated with a position requiring political allegiance. *See id.* The school nurse also has the ability to supervise health assistant personnel, another activity associated with a position requiring political allegiance. *Id.* The undisputed facts in this case demonstrate that the position of high school nurse requires

political allegiance to the Defendant Board. I, therefore, find that summary judgment in favor of the Defendants is appropriate with respect to the freedom of association claim.

The Plaintiff argues, however, that the Defendants should not have denied her employment when they had no reasonable basis to believe that the Plaintiff would not follow their abstinence-only policy even though she personally believes that the abstinence-based policy is more effective. The Plaintiff cites to *Healy v. James*, 408 U.S. 169 (1972) and *Bertot v. School Dist. No. 1, Albany County, Wyo.*, 522 F.2d 1171 (10th Cir. 1975) to support this argument. *Healy* addressed the issue of whether a state college violated the First Amendment by not officially recognizing a student organization. *Bertot* involved freedom of speech issues, not freedom of association issues and was written before the Supreme Court issued its opinions in *Elrod* and *Branti*. *Healy* and *Bertot* are distinguishable from this case. Without any other legal support, I cannot find that the Defendants were obligated to believe the Plaintiff's assertion that she would follow their abstinence-only policy.

The Plaintiff further argues that if the position of school nurse includes a political allegiance requirement, the Defendants failed to use a less restrictive means of testing whether the Plaintiff would have followed the Defendants' abstinence-only policy. The Plaintiff suggests that the Defendants could have hired her as high school nurse and determined from her job performance whether she followed the abstinence-only policy. The Supreme Court held that the least restrictive means for allowing patronage based employment decisions to ensure loyalty is to limit those adverse employment decisions to employees in positions which require political affiliation to effectively perform the functions of the position. *Elrod*, 427 U.S. at 367; *Branti*, 445 U.S. at 518. In the context of dismissals, the Tenth Circuit in *Green v. Henley*, 924 F.2d 185,

8

187 (10th Cir. 1991) held that "[t]he Court has set no requirement of demotion to a nonpolicymaking position as a preference to termination." *Jimenez Fuentes*, 807 F.2d at 247 also held that when a termination is defended on loyalty grounds, "there is no requirement that the employer wait for cause to dismiss." Analogizing *Green* and *Jimenez Fuentes* with failure to hire cases, there is no requirement that the Defendants hire the Plaintiff and then wait to see if she actually keeps her promise to follow the abstinence-only policy.

      B.  Qualified Immunity

The individual Defendants further contend that they are entitled to qualified immunity on the freedom of association claim. Once the defendant pleads qualified immunity, the burden shifts to the plaintiff to demonstrate (1) the defendant's conduct violated the law, and (2) the relevant law was clearly established when the alleged violation occurred. *Clanton v. Cooper*, 129 F.3d 1147, 1153 (10th Cir. 1997). Because the Plaintiff failed to demonstrate that the Defendants violated her right to freedom of association, I find that the individual Defendants are entitled to qualified immunity on that claim.

      C.  The Right to Free Speech and Privacy Claims

The Defendants assert that the Plaintiff has failed under Fed. R. Civ. P. 12(b)(6) to state right to free speech and privacy claims. The Plaintiff admits that she does not have a free speech claim which is separate and distinct from her right to freedom of association claim. With respect to the privacy claim, the First Amended Complaint does not state how the Plaintiff's right to privacy was violated. Without specific allegations, I cannot find that the Plaintiff's conclusory claim of a violation of her right to privacy is sufficient to state a cognizable claim under Rule 12(b)(6). For these reasons, I will dismiss with prejudice the claims alleging violations of the

Plaintiff's right to free speech and privacy.

    D.  Defendants' Request to Strike Allegations

Since the entirety of the Plaintiff's First Amended Complaint is subject to dismissal, the Defendants' request to strike several paragraphs from the First Amended Complaint under Fed. R. Civ. P. 12(f) is moot.

IT IS ORDERED that Defendants' Motion to Dismiss or in the Alternative for Summary Judgment (Doc. No. 16) is granted in that this cause is dismissed with prejudice and the Defendants' request to strike certain allegations from the First Amended Complaint is denied as moot.

                                                     */s/ James A. Parker*
                                        CHIEF UNITED STATES DISTRICT JUDGE